## IN RE SARAH M.*
### (7532)

DUPONT, C. J., DALY and STOUGHTON, Js.

Argued June 7—decision released August 15, 1989

*Jane S. Scholl,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellant (petitioner).

*Thomas F. Gudsnuk,* with whom, on the brief, were *Barbara L. DeGennaro* and *Tracy L. Ford,* law student intern, for the appellee (respondent father).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Gary L. Broder,* for the appellee (respondent mother).

*Bruce W. Diamond,* with whom, on the brief, was *Richard M. Marano,* for the minor child.

DALY, J. This appeal involves a petition to terminate the parental rights of the parents of the minor child brought pursuant to General Statutes § 17-43a by the commissioner of the department of children and youth services (DCYS). DCYS appeals from the trial court's denial of the petition, claiming that trial court erred (1) in finding that there was no claim made concerning the absence of an ongoing parent-child relationship, and (2) in finding that DCYS had not met its burden of proving that the parents had failed to rehabilitate themselves. We find error in part.

The following facts are relevant to the disposition of this appeal. The child was born on December 5, 1981. At that time, the parents were legally married, but living separately. After a short period during which the parents were reunited, they divorced and legal custody of the child was awarded to the mother. In May, 1985, the mother incurred financial difficulties and placed the child in the father's care. In August, 1985, a DCYS caseworker was assigned to investigate allegations that the child had been sexually abused by her father. The investigation did not indicate that the father had committed any abuse. In September, 1985, the father was awarded legal custody under the conditions that he cooperate with DCYS and reside with his mother. The DCYS caseworker continued his involvement in the case and, on the basis of his conclusion that Sarah was a neglected child, petitioned the trial court for her commitment to DCYS, pursuant to General Statutes § 46b-129 (d). The court granted the petition on November 5, 1985.[1] Since that time, the child has been placed

---

[1] The trial court also ordered both parents and Sarah to be evaluated at Newington Children's Hospital. The evaluation took place in March, 1986.

in two foster homes, in a hospital for emergency psychiatric treatment, and, since August 1, 1986, has been in a facility for emotionally disturbed children.

The same caseworker remained on the case after the child was committed to the care of DCYS. Both parents experienced difficulties dealing with him and specifically requested that DCYS assign a new caseworker, but that request was denied. During that time, the parents did not consistently exercise their visitation rights.[2]

On March 27, 1987, DCYS petitioned the court to terminate the parental rights of both parents, alleging (1) that the parents had failed to rehabilitate themselves, pursuant to General Statutes § 17-43a (b) (2),[3] and (2) that the child had been denied by reason of acts of parental commission or omission, the care, guidance or control necessary for her physical, educational, moral or emotional well being, pursuant to General Statutes § 17-43a (b) (3).[4] On April 23, 1987, the court ordered

[2] In its second factual finding, made pursuant to General Statutes § 17-43a (d), the trial court found partial excuse for both parents' inconsistent visitation based on their lack of transportation.

[3] General Statutes § 17-43a (b) (2) provides that the court may order the termination of parental rights if DCYS can prove by clear and convincing evidence, that, for more than one year, the nonconsenting parents of a "child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child."

[4] General Statutes § 17-43a (b) (3) provides that the court may order the termination of parental rights if DCYS can prove by clear and convincing evidence, that for more than one year, "the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights."

that visitation end but indicated that if the father received counseling, the court would reconsider its order. On August 25, 1987, DCYS amended its petition to include a third allegation that there was an absence of an ongoing parent-child relationship. See General Statutes § 17-43a (b) (4).[5] The court allowed this amendment on September 10, 1987.

On October 17, 1988, the trial court denied the petition to terminate the parental rights of both parents, stating (1) that there was no claim that there was an absence of an ongoing parent-child relationship, (2) that DCYS did not meet its burden of proving the parents had failed to rehabilitate themselves, and (3) that DCYS did not meet its burden of proving parental commission or omission. The appeal is based only on the first two findings.

The petitioner's first claim is that the trial court erred in concluding that DCYS had not stated a claim pursuant to § 17-43a (b) (4). Practice Book § 4061 empowers this court to reverse the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

The trial court stated in its memorandum of decision that "[t]here is . . . no claim that there is an absence of an ongoing parent-child relationship." Our review of the record, however, indicates that that statutory

---

[5] General Statutes § 17-43a (b) (4) provides that the court may order the termination of parental rights if DCYS can prove by clear and convincing evidence, that, for more than one year, "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."

ground was claimed in the amended petition. We conclude that the trial court erred in determining that that statutory basis was not claimed. Accordingly, we must remand for a new hearing on that claim.

The petitioners' second claim of error is that the trial court's factual findings, made pursuant to General Statutes § 17-43a (d),[6] and as further stated in its memorandum of decision, are inconsistent with its conclusion that DCYS did not prove by clear and convincing evidence that the parents had failed to rehabilitate themselves, pursuant to § 17-43a (b) (2). We disagree.

" 'The termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . ." General Statutes § 17-32a (e) (Rev. to 1972) [now § 45-61b (g)].

---

[6] General Statutes § 17-43a (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the forseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents and their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 [1972]; see *In re Appeal of Kindis,* 162 Conn. 239, 240, 294 A.2d 316 [1972]; *Cinque* v. *Boyd,* [99 Conn. 70, 82, 121 A. 678 (1923)].' *Anonymous* v. *Norton,* 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). Termination of parental rights is 'a most serious and sensitive judicial action.' Id., 430." *In re Luis C.,* 210 Conn. 157, 164–65, 554 A.2d 722 (1989).

" 'Section 17-43a carefully sets out . . . four situations that, in the judgment of the legislature, constitute "countervailing interests" sufficiently powerful to justify the termination of parental rights in the absence of consent. The commissioner of children and youth services, in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds.' " Id., 165.

General Statutes § 17-43a (b) (2) empowers the trial court to grant a petition to terminate parental rights if it finds, upon clear and convincing evidence, that "the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child."

Our Supreme Court has recently held that § 17-43a (b) (2) "requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such

rehabilitation must be foreseeable 'within a reasonable time.' There may be instances in which the evidence does not establish that parental rights should be terminated under this section, despite the fact that continuing support programs for the parent may be suitable or even necessary." *In re Luis C.,* supra, 167. Moreover, the court must also consider the six factors listed in General Statutes § 17-43 a (d) when determining whether a parent has failed to rehabilitate himself or herself. *In re Shavoughn K.,* 13 Conn. App. 91, 92, 534 A.2d 1243 (1987), cert. denied, 207 Conn. 805, 540 A.2d 374 (1988).

In the present case, the trial court issued factual findings as required by § 17-43a (d). Our review indicates that the fifth factual finding suppports the conclusion that DCYS did not meet its burden of proving lack of rehabilitation.[7] The trial court found that both parents had sufficiently changed their circumstances from 1986 to 1988 to be able to provide proper parenting in the forseeable future. The trial court properly extended its consideration of evidence of the parents' changed circumstances that had occurred through the end of the trial. See *In re Shannon S.,* 41 Conn. Sup. 145, 146, 562 A.2d 79, aff'd, 19 Conn. App. 20, 560 A.2d 993 (1989). The court also properly concluded that the fact that both parents needed further counseling did not mean they had not sufficiently rehabilitated themselves. See *In re Luis C.,* supra. Because it was proper for the court to consider the rehabilitation efforts of both par-

---

[7] The fifth factual finding states, "Although Lynn W. has maintained only sporadic contact with Sarah over the time since her commitment, she has changed her circumstances sufficiently where one could conclude that Sarah could be returned to her in the foreseeable future. With counseling and support services this would result. As to Kenneth M., contact was minimal even prior to his visitation being terminated by the court. However, here, too, his current willingness to recognize Sarah's problems and his willingness to participate in counseling allows one to conclude that he, too, could provide proper parenting within the forseeable future."

ents through the time of trial, and because its factual finding of rehabilitation is not clearly erroneous, we conclude that the court did not err in determining that DCYS failed to prove its claim.[8]

Likewise, the court's factual finding in the memorandum of decision supports its conclusion. The court also found that DCYS' own expert witness, a clinical psychologist who had evaluated both parents in 1986, made no recommendation that either parent receive therapy and that this expert had no knowledge of the mother's present psychological state.

Our limited function on appeal is to determine whether the trial court's conclusion regarding termination of parental rights is legally correct and factually supported. *In re Davon M.,* 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). Because the trial court's conclusion was factually supported and legally correct, we conclude that the trial court did not err in denying the petition on this ground.

There is error in part, the judgment with respect to the denial of the petition on the ground of an absence

---

[8] The petitioner also argued that the trial court's factual finding that the existence of a personality conflict between the parents and the DCYS caseworker was not caused by any improper action or motive by the caseworker is inconsistent with the trial court's earlier conclusion that the conflict was part of the reason that DCYS did not meet its burden in proving that the parents failed to rehabilitate themselves. We need not determine whether this specific factual determination is inconsistent with the trial court's ultimate conclusion because, taken as a whole, the memorandum of decision states other factual findings pertaining to: (1) the parents' evidence of their changed circumstances; (2) DCYS' failure to present evidence to the contrary on these changed circumstances; and (3) the court's determination that Sarah will have to remain at the institution for emotionally disturbed children for at least one year, at which time Lynn W., the mother, could move back to Connecticut and participate in counseling in preparation for the return of her daughter, all of which are consistent with the conclusion that DCYS did not prove its case.

of an ongoing parent-child relationship is set aside and the case is remanded for a new hearing limited to that issue.

In this opinion the other judges concurred.