[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 19, 1997, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of the mother and father of Devon U.[1], born November 17, 1996, a little boy who had been in foster care for a continuous period of 23 months prior to the date trial commenced on the petition. The whereabouts of Devon's mother and putative father were unknown at the time of filing, so both were duly notified by publication. On August 19, 1997, the court, (Teller, J.), proceeded to trial as to the father, Everett U., who never appeared, and entered a judgment terminating his parental rights to Devon the the ground of abandonment. Devon's mother, Tashanda W., after being incarcerated, was located by DCF. She appeared in court on November 20, 1997, with counsel, and indicated she intended to contest the petition. Trial commenced on the petition on October 21, 1998 and was concluded on December 10, 1998.[2]
The petition, as last amended on October 21, 1998, alleges three statutory grounds for termination of Tashanda W.'s parental rights. General Statutes § 17a-112(c), in pertinent part, provides for termination if "(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child;" "(B) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; and "(D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." The petition further alleges that as of the date of the filing of the amended petition, the grounds for termination have existed for not less than one year. CT Page 374
Termination of parental rights proceeds in two stages: adjudication and disposition. In the adjudicatory phase, the court must determine whether the proof provides clear and convincing evidence that any one of the grounds pleaded exists to terminate parental rights as of the date of the filing of the petition or last amendment, and that the ground established has been in existence for at least one year. In re Joshua Z.,26 Conn. App. 58, 63, 597 A.2d 842 (1991), cert. denied221 Conn. 901 (1992). If at least one pleaded ground to terminate is found, the court must then consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the child's best interest. Procedurally, the evidence as to both issues is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question.State v. Anonymous, 179 Conn. 155, 172-173, 425 A.2d 939 (1979);In re Juvenile Appeal (84-BC), 194 Conn. 252, 258, 479 A.2d 1204
(1984); In re Nicolina T., 9 Conn. App. 598, 602, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); In re EmmanuelM., 43 Conn. Sup. 108, 113, 648 A.2d 904, cert. denied231 Conn. 915, 648 A.2d 151 (1994).
 I
Factual Findings
At trial, DCF introduced the testimony of Dr. Kelly Forbes Rogers, a psychologist ordered by the court to evaluate Tashanda and her interaction with Devon; and Anthony Lilly and Lisa Zuccaro, DCF social workers. The mother, Tashanda W., introduced her own testimony and that of Beverly Herbert, a parent-child coordinator at the York Correctional Institution in Niantic, Connecticut. The child's attorney called no witnesses.
At the commencement of the trial, the court indicated that it would take judicial notice of the prior court rulings and social studies contained in the Hartford Superior Court for Juvenile Matters records regarding Devon and his sibling, Daquane U. No one objected to the court's proposal concerning items to be judicially noticed. See In re Mark C., 28 Conn. App. 247,251-254, 610 A.2d 181 (1992).
The credible and relevant evidence offered at trial, CT Page 375 interpreted in light of the prior court record concerning Devon and his sibling, Daquane, of which judicial notice is taken, supports the finding of the following facts:
On November 27, 1996, a petition alleging that Devon U. was a neglected and uncared for child was filed by DCF, along with a motion for an order of temporary custody, which was granted. At the same time, DCF also lifted a petition to terminate the parental rights, which was subsequently withdrawn. At the time the neglect and uncared for petition was filed, Devon, who was born on November 17, 1996, was hospitalized at St. Francis Hospital, where he had been born premature and exposed in utero
to cocaine and marijuana. Tashanda W. had sought no prenatal care. Devon had to remain hospitalized because he had difficulty feeding.
At the time of Devon's birth, Tashanda's three other children were not in her care. Her oldest child, a daughter, Shamonica B., was in the custody of her maternal grandfather. Dashawn D. and Daquane U., Tashanda's other sons, who also had been born premature and cocaine exposed in utero, were in the custody of DCF.[3]
Tashanda W. was born on October 4, 1975 in Hartford. She quit school at the age of fifteen when she became pregnant with her daughter. She started using drugs at the age of sixteen, first smoking marijuana and then "graduating" to snorting heroin and free basing cocaine.
Tashanda has a history of incarceration and criminal convictions since 1992, including two convictions for assault. After her most recent conviction, she was confined to York Correctional Center from July, 1997 until May, 1998, when she was discharged to Quelan House, a half-way house in Norwalk, where she expects to remain until April of 1999.
DCF social worker Anthony Lilley testified that he has known Tashanda since September of 1994, when he was assigned to provide case management services for her oldest son, Daquane U. Tashanda had given birth to Daquane in June of 1994. She admitted to hospital personnel that she used drugs, but refused referrals for treatment because she didn't think her drug use affected her parenting. She was allowed to test this theory, but Daquane had to be removed from her home when he was about four months old pursuant to an order of temporary custody after being diagnosed CT Page 376 as failure to thrive. In four months, he had gained only one pound and four ounces.
At the time of Daquane's commitment on November 9, 1994, to which Tashanda agreed, she signed expectations to work toward reunification with him. She agreed to keep her whereabouts know to DCF, visit the child as often as she could, participate in parenting training, attend an inpatient drug program and aftercare, submit to random urine screens for substance abuse, secure adequate housing and income, have no further involvement with the criminal justice system and engage in no further substance abuse. With the assistance of counsel, she signed a form setting forth these expectations which was reviewed and approved by the court. Exhibit D. Tashanda's visits with Daquane were immediately inconsistent and her interaction with the child was poor. Although she became pregnant with Dashawn D. while Lilley sought to assist her with Daquane, Tashanda refused all referrals for services and never attended a single appointment. Dashawn D. was born on January 5, 1996 with cocaine in his system. Within a few months, DCF also removed him from Tashanda's custody.
At the time judgment was entered on April 20, 1997 terminating Tashanda's rights to Daquane, the court, (Teller, J.), found that she had complied with none of her expectations. Tashanda had not visited Daquane or contacted DCF since July of 1996.
On November 18, 1996, Lilley received a referral from hospital personnel that Tashanda had given birth to Devon. Tashanda had left the hospital several days after his birth, and Lilley could not locate her.
On April 10, 1997, Devon was adjudicated neglected and uncared for and committed to the department. On the date of the commitment, written expectations were not set for Tashanda because she was not present. Although she could have signed a service agreement or sought to have expectations approved by the court at a later time, neither she nor her attorney sought to do so. However, Tashanda was hardly at a loss to discern what was expected of her: the requisites for addressing her problems had been fully described to her at the time of Daquane's commitment, when the concerns as to her parenting ability were substantially the same. CT Page 377
Subsequent to Devon's commitment, Lilley kept trying to locate Tashanda, and found her incarcerated at York. Between the time Devon was discharged from St. Frances to the care of his current foster parents in November of 1996 and August of 1997, when Lilley located Tashanda at York, she never visited Devon or called DCF to inquire as to his well being. Tashanda was at York for almost three months before she contacted the DCF liaison at York, Beverly Herbert, to request visits. At first, Tashanda requested to see both Devon and Daquane; she had been out of touch with DCF and her children for so long she was unaware that her parental rights to Daquane had been terminated on April 10, 1997.
In the fall of 1997, Tashanda began calling Lilley asking to see Devon. At first, Lilley and his supervisor denied her visits because this termination petition had been filed and Devon had not seen his mother since birth. Tashanda's anticipated release date at the time was in the year 2000. In April of 1998, the court allowed one visit per month, as long as the Devon did not react too adversely. Lilley observed one visit, noting that the child displayed no recognition of his mother, and was more interested in toys than in seeing her.
DCF social worker Lisa Zuccaro, the present treatment worker on Devon's case, was assigned this case on September 18, 1998. She had been informed by a counselor that Tashanda's program at Quelan House included attending NA/AA meetings, an office skills program and weekly parenting classes. Tashanda introduced as evidence of her rehabilitation a number of completion certificates, and described participation in a number of group sessions. There was no individual psychological counseling available for her at York and the level of therapy and drug treatment offered at Quelan House is unclear. Tashanda's parole officer did advise Zuccaro that she will be expected to enroll in an outpatient drug treatment program when she is released on parole. Zuccaro also observed a visit between Tashanda and Devon. She observed Devon was more comfortable with his social worker than with his mother.
When Tashanda testified, she displayed a seriously depressed and upset demeanor. She admitted that she had been depressed since it was the holiday season and no family members called or sent her cards, which was inconsistent with her testimony that she had a brother and a sister-in-law who had always been there for her. She admitted to getting aggravated when someone at the CT Page 378 halfway house "messes up" after she's done her chores. Tashanda was vague on her plans for the future, and did not know where she was going to stay when she is released on parole in April of 1999. Although Tashanda claims to have formed a bond with Shamonica and Dashawn, her other two children, Shamonica only visited her mother once while she was at York and Dashawn never visited. Plans for extended stays with her at Quelan House have never materialized. Despite Tashanda's assurances to the contrary, there seems to be little family support for her plan to regain custody of her children. Tashanda lacks insight into her past deficiencies as a parent, as exemplified by statements that she had a good relationship with her daughter even while she was getting high, and that it upset her to see Devon's attachment to his foster mother when she, after all, is the one who "gave birth to him."
Tashanda admitted it would be better for Devon to stay with his present foster family if they want to adopt him since he's been there for so long. She was not aware of Devon's special needs.
On the first day of trial, Zuccarro said the foster mother, Ms. S., had some concerns about adopting Devon, but at the conclusion of the second day of trial, she and the attorney for the child indicated Ms. S. was now willing to adopt him. Zuccarro notes that Devon has specialized needs: hyperactivity and speech problems. He is also pigeon-toed and has been referred to Birth to Three services for children who are at risk for developmental delays.
Dr. Kelly Rogers, a clinical psychologist, was ordered to conduct an individual evaluation of Tashanda and her interaction with Devon.
During an extensive interview with Rogers, Tashanda, who is now 23, indicated her first mental health problems surfaced when she was 10 years old. She was hospitalized at Mt. Sinai for a nervous breakdown, but only received a brief course of counseling. She admitted to an extensive history of substance abuse, including heroin, cocaine and marijuana. Rogers notes:
"This is an individual who is nervy, irritable and often resentful of her lot in life. She is drawn to drug use as it gives her license to express her anger and an artificially inflated sense of self-esteem. Even without drug use, there CT Page 379 appear to be a number of pervasive, maladaptive patterns of personality functioning."
During his testimony, Rogers stressed that Tashanda's personality disorder was a relatively enduring trait which would require substantial and sustained effort over a number of years to reverse. He felt one would need to wait at least another year after she leaves her highly structured program at Quelan House to be assured of any lasting rehabilitative affect. Based upon what he observed of Tashanda's motivation and her disorder, he concluded there is a very poor prognosis for her rehabilitation. She remains self-absorbed, focusing on her own rights and interests, which detracts from her ability to progress.
The interaction Rogers observed between Tashanda and Devon was not positive. Devon arrived with his foster mother, Ms. S., and refused to leave her sight. For twenty minutes, Devon clung to Ms. S. in the presence of Tashanda and was "selectively mute." Ms. S. expressed amazement that Devon was so quiet, indicating that he was usually lively and verbal at the foster home. Whenever Tashanda extended her arms to Devon, he recoiled and whimpered. He would not take a snack from her. On several occasions, Ms. S. tried to encourage the child to go to "mommy." On each occasion, Devon looked at Ms. S. rather than Tashanda when he heard that word. When Tashanda finally managed to pick up Devon, he flailed and cried until she put him back down, whereupon he threw a tantrum.
Rogers concluded that there was no indication of any bond between the child and Tashanda and her attempts to secure his attention were remarkably inept. Devon not only failed to relate to her, but seemed frightened of her, although he related quite well to Rogers. Devon, Rogers concludes, clearly identifies Ms. S. as his psychological mother, noting indications of a "strong bond." Rogers also emphasized that Devon is at the age where he must form stable attachments to a parental figure, and any further delay would be very problematic for him.
In conclusion, Rogers noted that Tashanda's long history of substance abuse makes her vulnerable to resuming drug use, which would likely foster neglect. She also shows evidence of an antisocial personality disorder which limits her investment in others, including a child, and promotes risky and neglectful behaviors. He concludes Tashanda is at "substantial risk for relapse," although he was aware of her residential program at the CT Page 380 time of his evaluation. He finds that Devon's placement with his mother would not be in his best interest and strongly advocates the termination of Tashanda's parental rights, as Tashanda "has demonstrated very little commitment to the relation with the child in the past. Her personality makeup and propensity to abuse substances suggest a poor prognosis for sustained efforts, and abortive contact would be confusing for the child."
 II ADJUDICATION
Each statutory basis set out in General Statutes §17a-112(c) is an independent ground for termination. In re BabyGirl B., 224 Conn. 263, 618 A.2d 1 (1992). The petitioner is required to prove one or more of the two grounds alleged in its petition by clear and convincing evidence.
A. Abandonment — C.G.S. § 17a-112(c)(A).
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child.
Tashanda's level of commitment and responsibility toward her three older children had been substandard. With Devon, there was no demonstration of any interest whatsoever until September of 1997, when he was already 10 months old. Tashanda left her newborn baby in the hospital and never looked back until it became convenient for her to use her status as a biological mother to gain access to programs that would fast track her release from York on parole. She had incurred a thirty month sentence. While Tashanda was free and capable of availing herself of better and more intensive services to regain custody of Devon and her other children, she did nothing. She failed to keep her whereabouts known to DCF or her own attorney, although she knew how to contact Lilley.
Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern or responsibility." In re Migdalia M.,6 Conn. App. 194, 209, 504 A.2d 533 (1986). There is no evidence that Tashanda contributed support to Devon since his initial placement in November of 1996. There is no evidence she regularly CT Page 381 sent him cards, gifts or letters or telephoned the foster home or DCF regularly to inquire as to Devon's well-being. Her belated attempt to establish a relationship with Devon after getting herself incarcerated has been some indication of interest or concern, but she has yet to exhibit a reasonable degree of responsibility as to his welfare.
 "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted.)" In re Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122 (1993); In re Roshawn R., 51 Conn. App. 44, 53, ___ A.2d ___ (1998).
Tashanda has fallen far short of the above standard. She has never provided Devon with a stable home or other necessities or any moral guidance. She expresses no remorse and shows no insight into just how harmful her behavior has been to herself and Devon. She considers being on drugs an excuse for her past deficiencies, as if the substances, and not the substance abuser, are to blame. She has actualized no plan for her life upon her release, which is imminent. The status of her employment is unclear and she has no place to live. She has only a minimal understanding of Devon's history, daily activities or special needs. By her own admission, she does not know him.
Statutory abandonment on the part of Tashanda has been proven by clear and convincing evidence. She has not manifested a consistent, prolonged and reasonable degree of interest, concern or responsibility as to Devon's welfare. In re Rayna M.,13 Conn. App. 23, 37-38, 534 A.2d 897 (1987); In re Michael M.,29 Conn. App. 112, 121-123, 614 A.2d 832 (1992).
The evidence is clear and convincing that Tashanda's abandonment of Devon existed for not less than one year prior to the filing of the amended petition on October 21, 1998.
B. Failure to Rehabilitate — C.G.S. § 17a-112(c)(B).
CT Page 382
If the mother of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding fails to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child, grounds for termination exist.
The evidence is clear and convincing that Devon was adjudicated neglected and uncared for and committed to DCF on April 10, 1997. His commitment was extended on April 10, 1998.
Personal rehabilitation, as used in the statute, refers to the restoration of the parent to a constructive and useful role as a parent. In re Migdalia M., 6 Conn. App. 194, 203,504 A.2d 532 (1986).
Whether the age and needs of the child do not support allowance of further time for the parent to rehabilitate must also be considered. In re Luis C., 210 Conn. 157, 167,554 A.2d 722 (1989). Also, in determining whether further allowance of a reasonable period of time would promote rehabilitation, a court can consider efforts made since the date of the filing of the petition to terminate parental rights. In re Sarah M.,19 Conn. App. 371, 377, 562 A.2d 566 (1989).
The evidence in this case is clear and convincing that Tashanda, as of the date of the filing of the last amendment to the termination petition on October 21, 1998, had not achieved a reasonable degree of rehabilitation, and there is no evidence of conduct prior or subsequent to the date of the filing of the amended petition which would encourage the belief that within a reasonable period of time, considering the age and needs of Devon, she could assume a responsible position in his life.
In light of Devon's age and the Fact that he has been in foster care for over two years, Tashanda's anticipated rehabilitation after her release, which would take a minimum of one year even if she stays focused, is simply not a reasonable period of time to put a permanency plan for the this child on hold. Rogers' psychological evaluation was most discouraging. He noted that Tashanda never demonstrated any parenting ability with any of her four children. He opined that Tashanda's prognosis for overcoming her personality disorder, which directly bears on her ability to parent and her commitment to her children, is poor. CT Page 383 Rogers describes her disorder as a relatively enduring trait, which renders her prone to violence, risk taking, irresponsibility and poor impulse control. Prior incarcerations did not successfully rehabilitate her. Once released from the structured setting, she resumed her substance abuse.
While a parent's compliance with expectations set after the adjudication of the neglect or uncared for case or the parent's success in fulfilling service agreements entered into with DCF are relevant to the rehabilitation finding, the fulfilling of expectations is not the dispositive issue, albeit an important consideration. In re Luis C., supra, 210 Conn. 167-168. The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parenting than she was at the time of the commitment. In re Michael M., supra, 29 Conn. App. 126. The answer to that question is a resounding "no."
While Tashanda is trying to improve herself, her recent efforts at rehabilitation and the minimal description provided as to the content of her program do not persuade the court that she has conquered her addiction sufficiently or that her rehabilitation to a useful and constructive parental role is probable in a reasonable period of time. She has high hopes, but no concrete or realistic plan to resume the care of her 3 children.
The evidence is clear and convincing that Tashanda has not achieved a status where she is more able to parent Devon than she was at the time of his initial commitment, nor is there any evidence to conclude that rehabilitation to the role of a constructive parent could be achieved within a reasonable period of time.
The court believes further delay in this case to attempt to promote more efforts at rehabilitation on the part of Tashanda would be severely injurious to this child, who has been in a loving foster home for over two years. Devon is firmly attached to his foster mother, who wishes to adopt him. Rogers believes he should have a permanent home established before he is three. The second ground alleged for termination has been established by clear and convincing evidence.
It is also firmly established, by clear and convincing evidence, that Tashanda's failure to rehabilitate existed for a CT Page 384 period in excess of one year as of the date of the filing of the last amendment to the termination petition on October 21, 1998.
C. No Ongoing Parent-Child Relationship — § 17a-112(c)(D).
DCF persists in erroneously alleging this ground in cases where a newborn child is removed from a parent pursuant to an order of temporary custody accompanied by a petition for neglect. Case law has prohibits the use of this ground in such a situation. See discussion in In re Valerie D., 223 Conn. 492,532-535, 613 A.2d 748 (1992).
This ground, accordingly, has not been proven by clear and convincing evidence and is hereby dismissed.
 DISPOSITION
1. Section 17a-112(e) Criteria
The court has found by clear and convincing evidence that two of the statutory grounds alleged by the petitioner for the termination of the Tashanda W.'s parental rights have been proven.
Before making a decision whether or not to terminate Tashanda's parental rights, the court must also consider and make findings on each of the seven criteria set forth in Sec.17a-112(e). In re Romance M., 229 Conn. 345, 355, 641 A.2d 378
(1994).
These criteria and this court's findings, which have been established by clear and convincing evidence, are as follows:
(1) "The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
In the past, with respect to Tashanda's other two sons, DCF made efforts to refer Tashanda to prenatal care, substance abuse treatment and other necessary counseling. In Devon's case, as in the past, DCF's efforts were thwarted by her lack of cooperation, criminal proclivities and failure to keep DCF advised of her whereabouts. For many months, DCF could not locate Tashanda to recommend services for Devon until she was incarcerated. While CT Page 385 incarcerated, Tashanda has been provided visitation and she has participated in group counseling programs addressing parenting issues, substance abuse, employment skills and self awareness. However, her incarceration prevented DCF's ability to offer her the intensive services she still needs, such as individual therapy, intensive parental training and extensive drug rehabilitation. These could have been put in place at the inception of Devon's DCF protection had she not disappeared.
(2) "Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended."
As noted in paragraph (1) above, DCF made reasonable efforts, to the extent possible, with a missing and then subsequently incarcerated parent, to reunite Tashanda with Devon.
(3) "The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
No expectations were ever set by the court for Tashanda's reunification with Devon, as she did not appear at the time of his commitment. However, Tashanda had been advised in the case of Daquane what was expected of her, and the issues warranting Devon's removal were substantially the same.
(4) "The feelings and emotional ties of the child with respect to his parents, any guardians of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties."
The child has been placed with the same foster parents since early infancy. He is fiercely attached to his foster mother and has no parental bond with his biological mother. He is exhibiting behavioral and speech problems and requires a stable, consistent, loving and permanent home, which his present foster family is willing to provide.
(5) "The age of the child."
Devon was born on November 17, 1996. He is presently two years old and has been in the care of the same foster family uninterruptedly since he was about one month old. He has spent CT Page 386 his entire life, outside of the hospital in which he was born, with the same caretakers, who are willing to adopt him and who have demonstrated an ability to meet his needs. The federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670
et. seq., as amended, now mandates that after 12 months in foster care a child must have a plan for a permanent home. Inre Samantha B., 45 Conn. Sup. 468, 479, ___ A.2d ___ (1998). foster care should be a strictly limited episode in the life of a child. Devon has been in foster care for almost 26 months. He deserves a permanent home without further delay.
(6) "The effort the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest or the child to return to his home in the foreseeable future including but not limited to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent provided that the court may give weight to incidental visitations, communications or contributions and (b) the maintenance of regular contact or communications with the guardian or other custodian of the child."
Tashanda disappeared for many months subsequent to the birth of Devon, thwarting any reunification efforts. She continued to abuse drugs after Devon's removal, was incarcerated again, and only recently has exhibited any efforts to visit Devon regularly and address her drug addiction and mental and parental deficiencies. Tashanda has never secured adequate housing or income in order to provide care for the child, and there is no evidence she communicated with the child through any cards or letters. There is little evidence of the maintenance of regular contact or communication with DCF or the foster family.
(7) "The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable acts or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
There is no evidence that indicates that DCF or any other person interfered with Tashanda's ability to maintain a relationship with Devon by unreasonable acts or conduct. DCF's unwillingness to allow her visits with Devon after her extended and unjustified absence from his life was not unwarranted as the department, at a time when a termination hearing was imminent, CT Page 387 reasonably believed it was acting in the best interest of a child who had no relationship whatsoever with his mother. When the court ordered once a month visits, DCF complied.
There is no evidence that economic circumstances have constituted a significant factor in Tashanda's failure to maintain a meaningful relationship with him.
The state provided respondent mother with counsel at no expense to her throughout proceedings affecting Devon since the fall of 1996, although she physically first appeared in court in the fall of 1997.
2. Best Interest of the Child
The court must now address the issue of whether the termination of parental rights is in the best interest of the child. This is the dispositional phase of a termination proceeding. In re Valerie D., supra, 223 Conn. 511.
Devon is very attached to his foster family, especially Ms. S., his foster mother. The S. family plans to adopt Devon if this petition is granted. Any removal of Devon from this home, Rogers predicts, would be severely traumatic. He has been there since he was a very young infant.
Tashanda, although recently able to express interest and conceptualize what needed to be done in order to regain her son, has yet to successfully complete Quelan House and reenter society. That will be the big test, and her previous incarcerations were followed by relapses. She has not located a suitable home for herself or her child. It is highly unlikely that she will be in a position, in a reasonable period of time, to parent Devon. What progress she may have achieved since July of last year is unclear, having been presented primarily by her own self-serving testimony. Unfortunately, her recent accomplishments are too little, too late for Devon. She has yet to establish any form of bond or attachment with him. Perhaps, in time, she will be able to function in a useful parental role toward her other children, Dashawn and Shamonica, with whom she has established at least a minimal relationship.
Based upon the foregoing findings, and having considered all the exhibits and testimony, the court concludes that the evidence is clear and convincing that the best interest of Devon is served CT Page 388 by the termination of his mother's parental rights so he may be free for immediate adoption. The court notes that counsel for the child fully supports this result as being in the best interest of the child so that he can be provided with a permanent and stable home as soon as possible.
 CONCLUSION
The petition is granted and judgment may enter terminating Tashanda W.'s parental rights in Devon U. because of her abandonment of him and her failure to achieve rehabilitation. Pursuant to General Statutes Sec. 17a-112(i), it is ordered that the commissioner of DCF be appointed statutory parent so that Devon can be placed for adoption. It is the court's directive that Devon's current foster family be given first consideration as his adoptive home. The statutory parent shall report to the court within ninety days on a case plan for Devon. A review plan for Devon shall be filed in accordance with state and federal law until such time as an adoption is finalized.
KELLER, J.