MEMORANDUM OF DECISION
This case presents petitions for the termination of parental rights of Gloria S., and Tommie R., Sr., the biological parents of the minor children, Jashon R., Courtney S., Quadia R., and Tommie R., Jr., filed by the commissioner of the Department of Children and Families (hereafter "DCF") on February 14, 2000. Alleged grounds for this action are the parents' failure to rehabilitate since their children were committed to DCF on November 24, 1997. Further, as to the father, petitioner alleges abandonment, defined by statute as the failure to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children. General Statutes § 17a-112 (c)(A) This decision also addresses the petition for transfer of guardianship filed by the respondent mother.
Service was confirmed on the mother and the father on the plea date of March 14, 2000. The mother appeared on that date and was given court appointed counsel. The father appeared for an initial court hearing in the child protection case, was given a court appointed counsel, and appeared at only one subsequent hearing. He did not appear on the plea date for the termination of parental rights petition and failure to appear for CT Page 3341 trial.
The court has jurisdiction in this matter; there is no pending action affecting custody of the children in any other court, and reasonable efforts have been made to reunify this family. The court made findings that further efforts toward reunification were no longer appropriate as to the mother on November 23, 1999, and as to the father on November 10, 1998.
 FACTS
The court, having read the verified petition, the social study dated February 8, 2000, the psychiatric report of David A. Krulee, M.D., and heard the testimony of the DCF social worker, Gwendolyn Williams, makes the following findings by clear and convincing evidence.
On August 29, 1997, petitions of alleged neglect were filed by the Department of Children and Families (DCF) on all four children. On that same date, an order of temporary custody was filed and granted by the court (D'Addabbo, J.). The children were adjudicated neglected in that they were permitted to live under conditions injurious to their well-being and committed to DCF on November 24, 1997. (McLachlan, J.) The children have remained in the care and custody of DCF since their initial removal on August 29, 1997.
The parents were given court expectations on November 24, 1997. They were: (1) keep all appointment set by or with Dcf, keep whereabouts known to DCF or your attorney; (2) visit the children as often as DCF permits; (3) participate in counseling, specifically, parenting and drug/alcohol; (4) sign releases as requested; (5) secure/maintain adequate housing and income; (6) no substance abuse; and (7) no involvement with criminal justice system.
Initially, DCF referred and recommended the mother to attend drug treatment and she refused to do so. She then moved to Staten Island, New York, in December, 1997, to live with her sister and attend drug treatment. She was admitted to The North Richmond Community Health Center in January, 1998, and completed Phase III of the day program. She was about to begin the aftercare program when she missed six sessions and relapsed.
Gloria then began outpatient treatment at the Alcohol and Drug Recovery Center (hereafter ADRC) in Hartford upon her return to Connecticut. She completed two phases of treatment and relapsed the week before graduation. She refused to restart the program. Her substance abuse counselor brought her to Amethyst House in New Haven for in-patient CT Page 3342 treatment because she was pregnant, but Gloria refused treatment. She then began relapse prevention at ADRC on July 22, 1999, while awaiting admission to Coventry House which is an in-patient treatment program for women and their children. It was then verified by the social worker that the mother's residence was in Jamaica, New York.
Gloria returned to New York in August, 1999, despite a court order issued on November 10, 1998, for her to remain in Connecticut if she wanted to be reunified with her children. She was admitted to Jamaica Community Adolescent Program, Inc. (J-CAP) long-term residential treatment program on October 6, 1999. She remained in the program and moved into the reentry phase of treatment on July 17, 2000. This was the final phase of the treatment program, which included finding housing, employment, outside support groups and relapse prevention workshops. Gloria even began medical assistant training in New York for medial and dental assistants.
Unfortunately, on September 19, 2000, Gloria was discharged from the program for failure to comply with its rules and regulations. Since that date, she has failed to keep her whereabouts known to DCF. She refused to give the social worker her address or phone number.
The mother has seen the children on one occasion from the period of January, 2000, to the present. She has not recognized the children on special occasions through sending cards or gifts or making any phone calls. She has failed to maintain contact with DCF to find out how the children are doing or how to contact the children.
Tommie R., Sr., has had little to no compliance with the court expectations. He has not completed any substance abuse treatment program, parenting program, and has been whereabouts unknown for the majority of this case. He did not contact DCF about visits with his children nor asked how they were doing for the period from April, 1999, to November, 1999. He last visited with the children on April 9, 1999.
The DCF social worker had one contact with the father since February 8, 2000. He called her after the worker had called his sister in July, 2000, trying to find him to inform him of what was happening with the case. He refused to give her his address and said he did not want anything to do with DCF. The worker still went to his last address but was told he moved. She asked relatives and the mother, but no one knew his address or a way to contact him.
The father also has not recognized the children on special occasions through the sending of any cards or gifts of making phone calls to the child. He has not maintained contact with DCF to find out how the CT Page 3343 children are doing or how he could contact the children.
 ADJUDICATION
Each statutory basis set out in General Statutes Sec. 17a-112 (b) is an independent ground for termination. In re Baby Girl B., 224 Conn. 263,618 A.2d 1 (1992). The petitioner is required to prove one or more of the three grounds alleged in its petition by clear and convincing evidence.
A. Abandonment — General Statutes § 17a-112 (c)(A) as to thefather
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. The test for determining abandonment of a child for purposes of termination of parental rights is not whether a parent has shown "some interest" in his or her child, but rather, whether the parent has maintained any reasonable degree of interest, concern, or responsibility as to the child's welfare. In re Rayna M., 13 Conn. App. 23, 36,534 A.2d 897 (1987).
Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern or responsibility." In re Migdalia M., 6 Conn. App. 194, 209,504 A.2d 533 (1986). From the children's date of placement to the present, the father has failed to maintain consistent visits or to have any regular, meaningful personal interaction with the children. In fact, Tommie R., Sr., last visited his children on April 9, 1999.
Statutory abandonment on the part of Tommie R., Sr., has been proven by clear and convincing evidence. He has failed to display the minimal attribute of parental obligation. He has not manifested a consistent, prolonged and reasonable degree of affection, interest, concern or responsibility as to their child's welfare. In re Rayna M.,13 Conn. App. 23, 37-38, 534 A.2d 897 (1987); In re Michael M.,29 Conn. App. 112, 121-123, 614 A.2d 832 (1992).
B. Failure to Rehabilitate — General Statutes § 17a-112 (c)(B)as to the mother and the father
If the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding fail to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, CT Page 3344 they could assume a responsible position in the life of the child, grounds for termination exists. General Statutes § 17a-112 (b)(2).
Personal rehabilitation, as used in the statute, refers to the restoration of a respondent to a constructive and useful role as a parent. In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986). The parent's compliance with expectation set after the adjudication of the neglect or uncared for case or the parent's success in fulfilling service agreements entered into with DCF are relevant, but not dispositive, to the rehabilitation finding. In re Luis C., 210 Conn. 157, 167-168,5545 A.2d 722 (1989). The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parents than he or she was at the time of the commitment. In re Michael M., 29 Conn. App. 112, 126, 614 A.2d 832
(1992).
Whether the age and needs of the child do not support allowance of further time for the parent to rehabilitate must also be considered. Inre Luis C., supra, 210 Conn. 167. The reasonableness of the time period within which rehabilitation is sought to be accomplished is a question of fact for the court. In re Davon M., 16 Conn. App. 693, 696, 548 A.2d 1350
(1988). Also, in determining whether further allowance of a reasonable period of time would promote rehabilitation, a court can consider efforts made since the date of the filing of the petition to terminate parental rights. In re Sarah M., 19 Conn. App. 371, 377, 562 A.2d 566 (1989).
The children were adjudicated neglected and committed to DCF on November 24, 1997. Since then, the mother and the father have visited the children only a handful of times, have not successfully completed any substance abuse treatment program, and dropped out of contact with the petitioner for extended periods of time. There is no evidence to suggest that the mother nor the father undertook any rehabilitative steps toward reunification, or that they are likely to do so within a reasonable time in the future. Given each child's individual need and all of the children's need for a permanent, caring and stable home, it would be totally adverse to their best interests to allow the parents any further time to pursue reunification. DCF has proven parental failure to rehabilitate by clear and convincing evidence.
 DISPOSITION
Mandatory Findings
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat. CT Page 3345 § 17a-112 (c)(2). In arriving at a decision, the court must consider and make written findings regarding seven factors set out in Conn. Gen. Stat. § 17a-112 (e). The court makes the following factual findings which findings are made upon clear and convincing evidence:
1. (Finding regarding the timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent.)
Appropriate and timely services were provided by the Department of Children and Families including counseling, case management, transportation assistance, and visitation coordination. The services provided are more fully set forth in the Social Study which has been placed into evidence.
The father has been whereabouts unknown during a large portion of DCF's involvement in this case.
2. (Finding regarding whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended.)
DCF has made reasonable efforts given the situation and circumstances to reunite the family in accordance with state and federal law.
3. (Finding regarding the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.)
Regarding court orders, fulfillment of obligations, expectation and services agreements: The Department, with the approval of the Court, set reasonable and realistic expectations to reunify the family. There was only minimal compliance, if any by the mother and the father.
4. (Finding regarding the feelings and emotional ties of the child with respect to his/her parents, any guardian of his/her person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.)
5. (Finding regarding the age of the child.)
Jashon is ten years old, Courtney is eight years old, Quadia is six years and ten months old, and Tommie is four years and six months old. CT Page 3346
6. (Finding regarding the efforts the parent has made to adjust his/her circumstances, conduct, or conditions to make it in the best interest of the child to return him/her to his/her home in the foreseeable future, including, but not limited to:(A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.)
These parents have made little effort to adjust their circumstances to permit their children to safely return to their care; they have failed to maintain regular contact with their children or with DCF.
7. (Finding regarding the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
There is no evidence that the unreasonable act or conduct of DCF personnel or any other person prevented the respondent the father and the mother from maintaining a meaningful relationship with their children. There is no evidence that the parents' economic circumstances prevented a meaningful relationship from being maintained.
The court has found that the grounds for termination of the parental rights of the biological parents of Jashon, Courtney, Quadia and Tommie, Jr., have been proven by clear and convincing evidence. The court has made the seven statutory findings required, which all weigh in favor of termination being in the children's best interests. The court concludes, from the clear and convincing evidence that the children cannot wait any longer for permanency.
Transfer of Guardianship
The court must also consider the children's best interests in light of the petition to transfer the guardianship filed by the respondent mother. She requests that the guardianship be transferred to the "maternal relatives as named in the DCF Interstate Compact Study".[2]
Both set of maternal relatives reside in New York. At issue is whether or not placement of the children with maternal relatives is in the their best interests.
Only one set of maternal relatives received approval for placement under the Interstate Compact Study, Mr. and Mrs. R., who reside in CT Page 3347 Jamaica, Queens, New York. The other set of maternal relatives, Mr. and Mrs. B. were not approved because Mr. B. has a criminal record.
Initially, Jashon was going to be placed with Mr. and Mrs. R. However, he cannot reside in a home with young children due to his sexualized behavior, and Jashon's younger half-brother resides with Mr. and Mrs. R. Courtney and Quadia both visited with Mr. and Mrs. R., and the visits initially went well. That situation has changed, and both children do not want to go to New York to live. Courtney has refused to go on any other visits and wants to stay where he is which is with his brother Quadia. Courtney cries hysterically when approached with the idea of visits and hides in the laundry room and tries to run away.
Tommie has been with his foster mother for three and one half years, calls her "mommy" and is very bonded with her. She is interested in adopting Tommy.
The court finds from the clear and convincing evidence that it is not in the children's best interests to be placed with their relatives. The court therefore denies the motion for transfer of guardianship to the maternal relatives.
Next, the court must examine whether it is in the best interests of the children to terminate their parents' rights to them. The court finds that neither Gloria nor Tommie R., Sr., is in a position to care for the children or will be in a position to do so in a reasonable amount of time. The court having considered all statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented, that it is in the children's best interest to terminate the parental rights of Gloria S. and Tommie R., Sr. so that they may at last be assured a permanent, safe home. Accordingly, it is ordered that their parental rights to the children are hereby terminated.
It is further ordered that the Commissioner of Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for said children and that the Commissioner shall file with the court, no later than thirty (30) days following the date of judgment, a written report toward such permanent placement and file such further reports as are required by state and federal law.
SWIENTON, J.