MEMORANDUM OF DECISION
In November of 2001, the Department of Children and Families (DCF) re-filed a petition to terminate the parental rights of Terry M as to her daughter Jennifer.[2] The respondent mother' was properly served with the petition and was represented by counsel throughout the court proceedings. This court has jurisdiction in this matter and there is no pending action affecting custody of the child in any other court. The statutory ground alleged as to Ms. M is a failure to rehabilitate. The termination of parental rights trial commenced and concluded on March 25, 2002.[3]
The court makes the following findings of facts and conclusions of law by clear and convincing evidence.
Jennifer was born on September 1993. In February of 1999 the family court vested temporary custody of Jennifer to DCF. In September of 1999, the child was adjudicated neglected and returned to her father under an order of protective supervision. Jennifer's father violated the order of protective supervision and in October of 1999 the order of protective supervision was modified and Jennifer was committed to the care and custody of DCF. Jennifer has remained committed to DCF to date.[4]
This court hereby incorporates into its findings the court, Levin, J.'s twenty eight page opinion dated June 26, 2001. Judge Levin found, among other things, that DCF had met its burden and proved that respondent mother had failed to rehabilitate. Judge Levin, however, found that due to Jennifer's recent loss of both her long term foster home and her therapist, it was not, at the present time, in the child's best interest, to terminate respondent mother's parental rights. Judge Levin ordered that "DCF shall continue to afford the respondent supervised visitation if she exercises that visitation with reasonable consistency and is appropriate and alcohol-free during visits. Unless a finding is made pursuant to General Statutes §§ 17a-110, 46b-129 that it is no longer appropriate to continue efforts to reunify the respondent and her daughter, DCF shall refer the respondent to an in-patient dual diagnosis program to treat the respondent's alcohol dependency and her mental health issues. The respondent shall participate in and cooperate with such a program, including aftercare recommendations." (Judge Levin's opinion pp. 27-28).
DCF continued to make reasonable efforts to reunify respondent mother and Jennifer after June of 2001. CT Page 4219
Ms. M required hospitalization due to her psychotic symptoms in late July of 2001. She was released from Yale Psychiatric Hospital on August 6, 2001, with a diagnosis of Psychosis NOS.[5]
At least until late 2001, Ms. M had required a visiting nurse to come to her home daily to ensure that Ms. M was taking her medication. According to State's exhibit A p. 7 the visiting nurse, who saw Ms. M daily, claimed Ms. M "smelled of alcohol."
Tom Calder, a clinical social worker from Catholic Family Services (CFS) was following Ms. M. CFS is the agency that provides mental health care to respondent mother. Mr. Calder is Ms. M's individual therapist. Mr. Calder informed DCF in October of 2001 that Ms. M was compliant with her mental health treatment but that she continued to abuse alcohol. Mr. Calder referred Ms. M to Family Counseling of Guilford, a substance abuse program that meets three times a week. Ms. M did not participate in the program.
DCF made a referral on December 9, 2001 to ABH.[6] The initial recommendation from ABH was for no treatment. It was determined however, that Ms. M had not been forthcoming with the ABH worker, regarding her extensive history of substance abuse and mental health issues. Once Mr. Savenelli, the worker for ABH, was informed by DCF of Ms. M's long history the recommendation was changed to in patient treatment. Ms. M refused to follow the recommendation and no other referrals regarding Ms. M's substance abuse were made. Ms. M denied she had a drinking problem.
Other than visitation, no other services, such as parenting aid or intensive family preservation services could be offered because all other services required that respondent mother be sober and engaged in substance abuse treatment. Ms. M was neither sober nor engaged in treatment.
Visitation was scheduled for once a month between Ms. M and Jennifer. The visits occurred in a public library within walking distance from Ms. M's residence. Jennifer was transported by the DCF from out of the county for the visits. There were monthly visits in August and September of 2001. Jennifer appeared anxious and overwhelmed and unable to sit still. Jennifer had no difficulty separating from mother and seemed to use the visit to assure herself that her mother was alright.
There was a visit in October of 2001, at which Ms. M smelled of alcohol but did not appear under the influence. Ms. M missed the November, 2001 visit. DCF had confirmed ahead of time that Ms. M would attend the visit. Respondent mother called thirty minutes after the visit was to CT Page 4220 begin to say that she was not feeling well and would not attend the visit. Jennifer appeared relieved that the visit would not occur.
The scheduled visit in January of 2002 was cancelled due to bad weather. Ms. M and Jennifer had seen each other for the entire day on January 8, 2002 during the court ordered evaluations. Ms. M was satisfied to wait until February for the next visit, rather than make up the missed January visit. The February visit did not occur because Jennifer broke her wrist.[7] In March, bad weather resulted in the DCF worker and Jennifer being late for the scheduled visit. The DCF worker called Ms. M upon arrival to the library to inform her they had arrived. Ms. M stated that she had waited thirty minutes and she was not coming back to the library. Jennifer then got on the phone to ask her mother to come to the library but Ms. M refused. The DCF worker and Jennifer stayed at the library using the computers. Jennifer did not appear unduly upset. Ms. M has not requested any further visits.
Based on the above, DCF has made reasonable efforts to reunify Ms. M with Jennifer. Ms. M intractable alcohol abuse and mental health issues made her unable to benefit from reunification efforts.
ADJUDICATION
Statutory grounds exist to terminate parental rights when a child has been found by the superior court to have been neglected or uncared for in a prior proceeding and the parent failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of a child. C.G.S. §17a-112 (j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look at the "status as it relates to the needs of the particular child, and further, such rehabilitation must be foreseeable within a reasonable time." (Citation omitted.) In re RoshawnR., 51 Conn. App. 44, 54-55 (1998)
Ms. M is compliant with her mental health treatment. Her continued abuse of alcohol and her refusal to seek and engage in substance abuse treatment however is still an issue. Judge Levin found that "she [Ms. M] is no closer to dealing with her alcohol dependence than she was when Jennifer was removed from her care in 1999." Ms. M continues to be no closer to admitting that she has an alcohol problem, or engaging in treatment.
"In the adjudicatory phase, the court may rely on events occurring after the date of the filing of the petition to terminate parental rights when considering the issue of whether the degree of rehabilitation is CT Page 4221 sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time. See In re Amber B.,56 Conn. App. 776, 785, 746 A.2d 222 (2000); See also In re Sarah M.,19 Conn. App. 371, 377, 562 A.2d 566 (1989)." In re Stanley D.,61 Conn. App. 224, 230 (2000).
As long as Ms. M continues to abuse alcohol she cannot be a parent to Jennifer. There is nothing to suggest that Ms. M's intractable denial regarding her alcohol use and adamant opposition to treatment will ever change. Jennifer has waited long enough for Ms. M to choose parenthood over the bottle. Ms. M has made her choice clear. Substantive substance abuse treatment and sobriety will not come in a reasonable period of time and Jennifer should not be required to wait any longer for something that will, in all likelihood, never happen. DCF has proven the statutory ground of failure to rehabilitate.
DISPOSITION
In the dispositional phase of a parental rights termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child.' It is Jennifer's best interest to have Ms. M's parental rights terminated.
In accordance with C.G.S. § 17a-112 (k) the court makes the following findings:
(1) The court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
This court has already outlined the referral and services offered after June of 2001. Ms. M was not cooperative with the referral made to either St. Raphael's or to ABH or to Guildford Counseling. The issues around visitation have also been previously discussed. Ms. M has chosen her lifestyle of alcohol use over her chance to reunify with Jennifer.
(2) This court finds, for reasons state previously, that DCF made reasonable efforts to reunite respondent mother with Jennifer pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended.
(3) The court, Levin, J. in addition to ordering visitation, also ordered that "DCF shall refer the respondent to an in-patient dual diagnosis program to treat the respondent's alcohol dependency and her mental health issues. The respondent shall participate in and cooperate with such a program, including aftercare recommendations." (pp. 27-28). CT Page 4222
DCF and Mr. Calder from CFS attempted to refer Ms. M to appropriate treatment programs. Ms. M has been noncompliant with the court's orders. There has been no participation or cooperation by Ms. M with the required treatment.
(4) The first termination of parental rights petition was denied because Jennifer was removed from her foster home of twenty two months due to an illness of her former foster father. The removal also resulted in her losing her long term individual counselor.
Jennifer has remained in her present foster family since May of 2001. She calls her present foster parents "mommy' and "poppy" and is clearly bonded to them. Her present foster parents wish to adopt Jennifer. Dr. Haymes, in his January, 2002 evaluation, concludes that the present foster parents are Jennifer's psychological parents. (State's exhibit C p. 18).
Jennifer worries about her biological mother. Jennifer, in the past, has said she wishes to live with her mother, but has said this not because it is true but because Jennifer does not want to make her biological mother feel bad. Jennifer feels responsible for her biological mother and uses the visits as a means to check on Ms. M. The parent-child bond between Ms. M and Jennifer has clearly diminished. Dr. Haymes in his court ordered parent-child interactional in January of 2002 noted: "Jennifer appears to be distancing emotionally from her mother. Her mother is behaving in a cool and distant manner with Jennifer. Both seem to be preparing themselves for further attenuation of the relationship. I observed no affection. Their communication was devoid of emotional content and notably sparse and empty." (State's exhibit C p. 17).
(5) Jennifer is now eight and one half years old.
(6) Ms. M has done nothing to address her alcohol abuse. Her lack of admitting to her alcohol abuse and engaging in substantive treatment was the basis for the adjudication of a failure to rehabilitate in June of 2001. Nothing has changed, except that Ms. M has become more entrenched in her belief that she has no alcohol dependency issues.
The only contact Ms. M has had with Jennifer has been during the monthly visits. There is minimal interaction between mother and daughter during the visits. Ms. M never requested to have missed visits rescheduled. When a visit was missed, there was no inquiry from Ms. M regarding Jennifer's welfare, even when the child suffered a broken wrist. CT Page 4223
(7) This court is not aware of any parent, person or agency that has prevented respondent mother from maintaining a meaningful relationship with Jennifer. Due to circumstances beyond anyone's control Ms. M was given a reprieve and therefore a second chance to reunite with Jennifer based on the June 2001 court ruling. Ms. M refused or was unable to take advantage of the court's ruling and it is now time for Jennifer to achieve permanency in adoption.
CONCLUSION
Based on the foregoing, it is in Jennifer's best interest to terminate the parental right of Ms. M. Accordingly, the respondent mother's parental rights are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed statutory parent. It is ordered that a permanency plan be filed within thirty days. Further status reports and permanency plans shall be filed in accordance with state and federal law.
The court hereby approves the permanency plan of termination of parental rights and adoption by the present foster family. The permanency plan is reasonable and DCF is making reasonable efforts to effectuate the plan.
Bernadette Conway, Judge of the Superior Court