[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 6, 2001, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of the mother and father of Simone P., who was born on November 1998. Simone has been in foster care since December 17, 1998 — most of her life. Simone's mother, Ebony P. and father, Sidney P., were served notice in hand. Both parents appeared and were appointed counsel. Trial on the petition was held on July 24, 2001. Just before the commencement of the trial, Ebony P., after consulting with counsel, consented voluntarily and knowingly to the termination of her parental rights. Sidney P. vigorously contested the petition.
The court finds there is no other proceedings pending in any other court affecting Simone's custody and that the court has jurisdiction to determine this matter. CT Page 14797
The petition alleges two statutory grounds for termination of Sidney P.'s parental rights, abandonment and failure to rehabilitate. General Statutes §§ 17a-112 (c)(3), in pertinent part, provides for termination if "(A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child:" and "(B)(1) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding. . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."
Termination of parental rights proceeds in two stages: adjudication and disposition. In the adjudicatory phase, the court must determine whether the proof provides clear and convincing evidence that any one of the grounds pleaded exists to terminate parental rights as of the date of the filing of the petition or last amendment. In re Joshua Z.,26 Conn. App. 58, 63, 597 A.2d 842 (1991), cert. denied 221 Conn. 901
(1992); In re Eden F., 250 Conn. 674, 688, 741 A.2d 873 (1999). If at least one pleaded ground to terminate is found, the court must then consider whether the facts, as of the last day of trial, establish, by clear and convincing evidence, that termination is in the child's best interest. Procedurally, the evidence as to both issues is heard at the same trial without first determining if the state has proven a statutory ground for adjudication before consideration of the dispositional question. State v. Anonymous, 179 Conn. 155, 172-173, 425 A.2d 939
(1979); In re Juvenile Appeal (84-BC), 194 Conn. 252, 258, 479 A.2d 1204
(1984); In re Nicolina T., 9 Conn. App. 598, 602, 520 A.2d 639, cert. denied, 203 Conn. 804, 525 A.2d 519 (1987); In re Emmanuel M.,43 Conn. Sup. 108, 113, 648 A.2d 904, cert. denied 231 Conn. 915,648 A.2d 151 (1994).
For the reasons stated below, the court grants the petition for termination of parental rights.[1]
 I FACTUAL FINDINGS
At trial, DCF introduced 3 exhibits and the testimony of three social workers, Shirley Crosswaith, Anna Jastrzedski and Nicole Russo. Sidney P. and the child's attorney called no witnesses and submitted no exhibits. CT Page 14798
The credible and relevant evidence offered at trial, and a review of the judicially noticed court records, supports the finding of the following facts:
A. Case History
On December 17, 1998, a neglect and uncared for petition and a motion for temporary custody were filed by DCF on behalf of Simone, alleging that she was being denied proper care and attention, physically, educationally, emotionally and morally, and that Simone's home could not provide the specialized care which her physical, emotional or mental condition required. An ex parte order of temporary custody was granted on the filing date and sustained after a preliminary hearing on December 21, 1998. Ebony P. agreed to the sustaining of the temporary custody order. Sidney P. did not attend the preliminary hearing, although he was served with a copy of the petition and ex parte order, along with an advisement of his rights, on December 17, 1998. Sidney P. also did not attend the plea hearing on January 28, 1999. The court adjudicated Simone neglected after Ebony pled nolo contendere to the petition's amended neglect allegation and committed her to the custody of DCF on March 25, 1999. On March 21, 2000, the court granted the first extension of the commitment. Sidney did not attend court that day. On February 6, 2001, DCF filed the petition to terminate parental rights. On March 8, 2001, the court granted the second extension of commitment. Counsel for Sidney, who had been appointed to represent him on February 8, 2001, after the filing of the termination petition, appeared at the second extension hearing.
Simone has three older siblings, and a younger sister born on April 28, 2000. DCF initially became involved with Ebony and her older children in 1994. This initial referral was succeeded by six more. At the time of Simone's birth, neglect and uncared for petitions were pending on her three older siblings. The presenting problems were physical abuse and neglect of the children by mother and her relatives, domestic violence, and substance abuse by the mother. The oldest child was exhibiting severely aggressive and out of control behaviors. On the same date that Simone was committed, her oldest brother also was committed and a protective supervision order was put into place for her other two siblings. Eventually, Ebony was successfully reunified with all three older siblings, and no involvement ever was necessary for Simone's younger sister. Protective supervision expired on July 16, 2001.
B. Father. Sidney P.
Sidney P.[2] was born on June 9, 1965 in Hartford. His parents never married. His father died in July, 2000 due to natural causes. His CT Page 14799 mother, age 58, is a recovering alcoholic and receives disability benefits. Sidney grew up in the Hartford area and was raised by his grandmother until the fourth grade, when he returned to live with his mother. Sidney P. graduated from Weaver High School and has held jobs as a VNA worker, a Meals on Wheels worker and a school bus driver.
Sidney left his mother's home at the age of 23. He has had sexual involvements with many women and has four other children from previous relationships. The present status of his relationship with these children is not known. He has never married. Sidney met the mother, Ebony in 1996 when they were neighbors on Hampton Street in Hartford. Their relationship lasted only six months, but did produce Simone. Ebony described Sidney as a physically abusive and highly controlling alcoholic, who requested she abort her expected child and denied his paternity.
Sidney has a record of criminal convictions dating back ten years that include several misdemeanor assaults, driving while under suspension, and more seriously, first degree sexual assault of a minor and risk of injury to a minor.
After Simone was born dangerously premature on November 1998, Shirley Crosswaith, the DCF social worker was assigned Simone's case. Crosswaith already had been working with Ebony on cases involving Simone's siblings. Although Crosswaith handled Simone's care from November 1998 to November 1999, she never met Sidney. Crosswaith was given his address by Ebony-an apartment upstairs from where Ebony had been living. Crosswaith made an unannounced visit to Sidney's apartment, but he was not home, so she left a letter asking him to call her. Sidney did call, and he and Crosswaith made an appointment to meet at his apartment. During this conversation, Sidney expressed doubts about his paternity, and the two also discussed his right to visit the child. Sidney did not keep the scheduled appointment. Crosswaith testified she went to his home, knocked and pounded on the door several times, as loud music was playing. When no one answered, she left a note. Crosswaith sent Sidney subsequent notices advising him of substance abuse referrals and paternity testing, but Sidney did not respond or follow through.[3] Sidney never asked Crosswaith for visits with Simone.
On May 6, 1999, Sidney was arrested on charges he had sexually assaulted another of his daughters, an eleven-year-old. Crosswaith learned Sidney was incarcerated on the charges On June 16, 1999, but was planning to transfer the case, so she did not contact him. By September of 1999, Sidney posted bond and was released. Other than one returned phone call, he made no attempt to contact Crosswaith to inquire as to Simone's welfare during the entire time Crosswaith handled the case. Despite the CT Page 14800 fact that Simone had been born premature, requiring special care after birth for almost a month prior to her discharge from the hospital, Sidney never called to express any concern or interest.
Crosswaith transferred the case to DCF social worker Anna Jastrzedski in November of 1999. Jastrzedski noted Crosswaith's prior attempts to work with Sidney, and she attempted to locate him. She inquired of Ebony as to his whereabouts, but Ebony did not know where he was. Jastrzedski learned of the investigative referral regarding Sidney's sexual assault of his older daughter, and she determined that although he had been incarcerated, he had been released from the Hartford Correctional Center. In February, 2000, Sidney was arrested for assault and disorderly conduct and again incarcerated. On August 11, 2000, he pled guilty to sexual assault first degree and risk of injury to a minor. His guilty plea was entered under the Alford doctrine.[4] By the fall of 2000, Jastrzedski, had begun preparing the file the petition to terminate parental rights, so she conducted another diligent effort to locate Sidney. She learned he was incarcerated at Cheshire and went there to discuss Simone's case with him and his prison counselor in October 2000. During a conversation with Jastrzedski, Sidney prevaricated, considering both consenting to the termination of his parental rights and establishing a relationship with Simone. He considered obtaining an attorney. Jastrzedski left Sidney her name and phone number but neither Sidney nor his counselor contacted her again. Jastrzedski and Sidney's counselor at Cheshire discussed possible programs available for Sidney P. at Cheshire, including parenting, substance abuse and sex offender sessions, but the counselor indicated Sidney had not enrolled in any.
Sidney's first involvement with the court was in March, 2001, when the court, learning of his incarceration, appointed an attorney for him in spite of the fact that he never asked for one.
At the beginning of the trial on the termination petition, Sidney, through his attorney, inquired about a paternity test although he had not followed through with a referral to participate in one. Apparently he wanted to be sure he was the biological father before the trial proceeded. It seems he waited a long time to be sure, hardly the behavior of a concerned or loving parent. DCF advised the court that an analysis had, in fact, been completed and he was not excluded as a biological father. It is telling to note that Sidney never attended court until the court had him brought in, that he never filed any motions to obtain visits with Simone, and that he has never had any contact whatsoever with a child he knew was born medically fragile. He knew his rights from the beginning; he never bothered to exercise them until the last minute. Sidney, a convicted child molester, will remain incarcerated until October of 2003, two more years. During trial, there was a suggestion CT Page 14801 that he had relatives who would be interested in caring for Simone, but he presented no definite plan and no relative has ever come forward. When Sidney is released, he must register as a sex offender for life and serve 10 years probation. He is supposed to attend sex offender and anger management counseling and treatment, but no evidence was presented at trial that he is involved in any programs that might rehabilitate him, although such programs are available to inmates.
D. Simone P.
Simone P. is nearly three years old. She was born on November 1998, after DCF became involved with Ebony and her three older children. She has never resided with either of her parents, having been placed in foster care when she was a month old. After limited prenatal care, Ebony gave birth to Simone, her fourth child, at the age of 20. Ebony admitted to ingesting alcohol and marijuana while pregnant with Simone, and her alcohol usage during visits to the baby was a concern of the nurses at the hospital immediately after Simone's birth. At birth, Simone exhibited symptoms of fetal alcohol syndrome. She has exhibited growth delays, physically and mentally, since birth, and has gastroesophagul reflux, a feeding disorder. She receives Birth to 3 services, and physical and speech therapy. She has been in two foster homes, none of which are willing to commit to adopting Simone due to the high level of care she requires. Her first placement was disrupted because the foster mother was getting on in age and DCF felt Simone needed a medically fragile foster home. Her present foster mother is a trained nurse. After this recent new placement was put into effect on June 15, 2001, Simone kept medical appointments regularly and Birth to 3 was put in place. There are other children in her present home who serve as good role models for Simone. Simone is a difficult child to feed. She only can eat soft foods and throws up often after eating. She is on a special high calories diet and prescription medications. She cannot feed herself and it requires a lot of time to feed her. Nearly three, she cannot use utensils and speaks only words, not sentences, and is not toilet trained.[5] After only a few weeks, Simone had bonded with her current foster mother, whom she calls "Mommy." She has never met her father, and has not seen her mother for almost a year. With required concurrent planning, DCF has made diligent efforts to find a home that will provide a more permanent resource for Simone, but her developmental difficulties and the inability at this time to predict their full extent, as well as her legal status, have been an impediment to finding her an adoptive home.
 II ADJUDICATION
CT Page 14802
Each statutory basis set out in General Statutes § 17a-112 (c) is an independent ground for termination. In re Baby Girl B., 224 Conn. 263,618 A.2d 1 (1992). The petitioner is required to prove one or more of the grounds alleged as to each parent in its petition by clear and convincing evidence.
A. Reasonable Efforts Finding
Unless a court has found in an earlier proceeding that efforts to reunify are no longer appropriate, DCF, in order to terminate parental rights, initially must show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. State. Sec. 17a-112 (c)(1). "Reasonable efforts means doing everything reasonable, not everything possible." In re Jessica B.,50 Conn. App. 554, 566, 718 A.2d 997 (1998).
On December 17, 1998, when issuing an ex parte order of temporary custody, this court, pursuant to General Statutes § 46b-129 (b) (vi) issued preliminary steps for Sidney to follow in order to promote reunification. These preliminary specific steps were served on Sidney along with the neglect and uncared for petition on December 17, 1998. Sidney was advised that to safely regain the custody of Simone he would have to (1) keep all appointments set by or with DCF, cooperate with DCF home visits, and visits by the child's attorney; (2) keep his whereabouts known to DCF, his attorney and the attorney for the child; (3) participate in parenting and individual counseling; (4) submit to a substance abuse assessment and follow recommendations regarding treatment; (5) submit to random drug testing; (6) sign releases to check on his progress in any programs or services; (7) secure and maintain adequate housing and legal income; (8) engage in no substance abuse; (9) have no involvement with the criminal justice system; and (10) cooperate with genetic testing if he denied paternity. Sidney did not appear for the preliminary hearing on the order of temporary custody. Despite early knowledge of Simone's involvement with DCF, he did not become involved in the court process until March 8, 2001, when his court-appointed counsel appeared for the plea hearing on the termination petition. Sidney ignored a letter from Crosswaith referring him for a substance abuse evaluation. He failed to keep an appointment with her to discuss Simone's case. There is no evidence he has attended a substance abuse evaluation or parenting classes since December of 1998. There is no evidence he has commenced any anger management or sex offender counseling as required by his criminal sentence. He was arrested twice since Simone's birth and never advised DCF, the court or Ebony P. of his incarcerations. There is no evidence he ever obtained his own residence or employment. He made only one inquiry CT Page 14803 of DCF, then failed to follow through. He never made a serious effort to request referrals or visitation with Simone. He denied paternity but never cooperated with genetic testing.
In sum, Sidney complied with none of the preliminary specific steps. While his counsel has argued that DCF failed to make reasonable efforts by failing to find him often enough and to make the prison provide him with services, the court will not so hold. First a parent must evidence some interest in a child, and when contacted by DCF, make some inquiry and show some willingness to follow through. Sidney denied Simone was his child, and ignored Crosswaith's efforts to contact him. DCF rightfully focused its efforts on reunification with the mother who was cooperating. At the first extension hearing, the approved permanency plan was still reunification with the mother. DCF should not have to provide services to a parent in a vacuum when that parent demonstrates no interest. Had Sidney met with Crosswaith, accepted the substance abuse referral and shown some willingness to be involved, most likely other referrals would have been made. When the workers sought out Sidney's location, they made contact, but DCF should not have to continue to make efforts that are repeatedly ignored or spurned. Moreover, once the DCF worker learned the circumstances of his arrest and subsequent conviction for child molestation from their own investigation, it would not have been reasonable for DCF to promote reunification with a child molester serving a 42 month prison sentence.
DCF's efforts were hindered by Sidney's lack of cooperation, his own voluntary criminal behavior, and his failure to keep DCF advised of his whereabouts and his incarceration.
The court finds by clear and convincing evidence that DCF, to the extent possible, made reasonable efforts to develop a relationship between Sidney and Simone and that Sidney, by clear and convincing evidence, was unable and or unwilling to benefit from such efforts.
B. Abandonment — C.G.S. § 17a-112 (c)(A).
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child.
Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern or responsibility." In re Migdalia M., 6 Conn. App. 194, 209,504 A.2d 533 (1986).
CT Page 14804
 "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted." In re Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122
(1993); In re Roshawn R., 51 Conn. App. 44, 53, 720 A.2d 1112 (1998).
It is indisputable that Sidney has fallen far short of the above standards for exhibiting interest, concern or responsibility. He was incarcerated several times prior to the adjudication date, but he was not incarcerated for the first seven months of Simone's life, and he was not incarcerated from September of 1999 to May of 2000. Although he was aware of the birth of the child, he denied paternity and he did not appear for the temporary custody hearing, the plea hearing, the adjudication and disposition on the neglect petition and the first extension hearing, even though he was not in jail on those court dates. He never sought to comply with any of his preliminary specific steps, and did not cooperate with the Crosswaith's initial efforts to engage him. He failed to inform DCF of his incarcerations, thus contributing to DCF's difficulty in engaging him. He made no attempt to have any contact with Simone, sent her no cards or gifts, nor did he make phone calls to DCF, Ebony, or the foster home to inquire as to the child's wellbeing. There is no evidence Sidney ever contributed any financial support to Simone.
Sidney's "efforts," such as they were, fail even to minimally fulfill any of the general obligations of parenthood. Even after Sidney became involved subsequent to the filing of the termination petition, he failed to take any steps toward achieving contact with his child and there is no evidence he has made any progress toward rehabilitation as a parent. Although sentenced in August of 2000, there is no evidence he has attended any programs and no credible explanation for his not having done so. Although he "could not avail himself of the programs normally available through [DCF] because of the restraints imposed by his incarceration, he is not excused from making use of available programs offered by the department of correction." He has a prison counselor. Inre Hector L., 53 Conn. App. 359, 372, 730 A.2d 106 (1999).
A parent who presents at the beginning of a termination of parental rights trial complaining that DCF has yet to prove he is the father by genetic testing fails to meet an even minimally acceptable showing of the CT Page 14805 parental attributes described in In re Roshawn R., supra. There is no evidence he has any understanding of the specialized care Simone would require, and he presented no viable plan at trial as to how or when he intended to assume her care.
Statutory abandonment on the part of Sidney has been proven by clear and convincing evidence. He has never manifested a consistent, prolonged and reasonable degree of interest, concern or responsibility as to Simone's welfare. In re Rayna M., 13 Conn. App. 23, 37-38, 534 A.2d 897
(1987); In re Michael M., 29 Conn. App. 112, 121-123, 614 A.2d 832
(1992).
C. Failure to Rehabilitate — C.G.S. § 17a-112 (c)(B).
This is the second ground for termination alleged against Sidney. If the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding fails to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child, grounds for termination exist.
The evidence is clear and convincing that Simone was adjudicated neglected and committed to DCF on March 25, 1999, two and a half years ago.
Personal rehabilitation, as used in the statute, refers to the restoration of the parent to a constructive and useful role as a parent.In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532 (1986).
Whether the age and needs of the child do not support allowance of further time for the parent to rehabilitate must also be considered. Inre Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989); In re Hector L;, supra., 53 Conn. App. 366-67. Also, in determining whether further allowance of a reasonable period of time would promote rehabilitation, a court can consider efforts made since the date of the filing of the petition to terminate parental rights. In re Sarah M., 19 Conn. App. 371,377, 562 A.2d 566 (1989).
The evidence in this case is clear and convincing that Sidney, as of the date of the filing of the termination petition on February 6, 2001, had not achieved a reasonable degree of rehabilitation, and there is no evidence of conduct prior or subsequent to the date of the filing of the petition which would encourage the belief that within a reasonable period of time, considering the age and needs of his daughter, he could assume a responsible position in her life. CT Page 14806
A parent's compliance with specific steps set when a temporary custody order is issued are a relevant and important consideration in reaching a rehabilitation finding. Get case recent one in car. The ultimate question is whether the parent at the time of the filing of the termination petition is more able to resume the responsibilities of parenting than they the parent was at the time of the commitment. In re Jeffrey C.,64 Conn. App. 55, 61-63, ___ A.2d ___ (2001); In re Shyliesh H.,56 Conn. App. 167, 179-180, 743 A.2d 165 (1999).
On pages 9 through 11, this decision reviews the attempts the court and DCF made to advise Sidney what would be expected of him in order to have Simone placed in his care, DCF's efforts to provide services, and the lack of Sidney's compliance.
The evidence is clear and convincing that Sidney has not achieved a status where he is more able to parent Simone than he was at the time of her initial commitment. In fact, given his arrest and subsequent conviction for sexually molesting his 11-year-old daughter, he is in a worse position now than he was in the winter of 1998 through 1999. Further, there is no evidence to conclude that rehabilitation into the role of a constructive parent could be achieved within a reasonable period of time. He will be incarcerated for at least another two years.
Further delay in this case in an attempt to succeed at rehabilitating Sidney would be injurious to Simone, who has never met her biological father. Another two years wait for a rehabilitation of Sidney that has yet to begin, with no prediction for success, will render Simone less capable of forming a new attachment to an adoptive family and less adoptable than she is now. After nearly three years of foster care, she still requires a high degree of care. Her most recent foster placement, which commenced on June 15, 2001, is addressing her needs ably, and Simone is making great progress. However, her present foster home cannot offer her an adoptive placement, and she needs to be legally freed so a diligent pursuit can begin to find her a loving and permanent home that can meet her specialized needs and is willing to accept the risk that maybe all of Simone's developmental delays as a result of fetal alcohol exposure have been detected. Several families already explored concluded that Simone required too much care. This will not be an easy search, and DCF cannot conduct it with one hand tied behind its back.
This was never a case of a loving parent trying whole heartedly, or even halfheartedly, to preserve his relationship with his child. Sidney never had any relationship with Simone. He knew what to do. He never tried. CT Page 14807
 III DISPOSITION
1. Section 17a-112 (k) Criteria
The court has found by clear and convincing evidence that all of the statutory grounds alleged by the petitioner for the termination of parental rights have been proven.
Before making a decision whether or not to terminate Sidney's parental rights, the court must also consider and make findings on each of the seven criteria set forth in Sec. 17a-112 (k). In re Romance M.,229 Conn. 345, 355, 641 A.2d 378 (1994).
These criteria and this court's findings, which have been established by clear and convincing evidence, are as follows:
(1) "The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent."
DCF offered timely and appropriate services, to the extent possible, to facilitate a relationship. Once cannot truly say "reunion" because there was never any relationship established between Sidney and Simone. The nature and extent of DCF efforts to engage Sidney has been more fully discussed at pages 9 through 11 of this decision. DCF's efforts were thwarted thoroughly by Sidney's lack of interest and cooperation and his incarcerations, which occurred subsequently to DCF's involvement with the family.
(2) "Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended."
As noted in paragraph (I) above, DCF made reasonable efforts, to the extent possible, to establish a relationship between Sidney and Simone. Prior to the adjudicatory date, Sidney was unwilling or unable to benefit from any services.
(3) "The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations."
Preliminary steps were issued by the court for Sidney at the time the court issued a temporary custody order on December 17, 1998. Sidney never CT Page 14808 attended court until after the termination petition was filed, so he never agreed to any steps. Sidney complied with none of the suggested preliminary steps.
(4) "The feelings and emotional ties of the child with respect to his parents, any guardians of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties."
The federal Adoption Assistance and Child Welfare Act of 1980,42 U.S.C. § 670 et. seq., as amended, mandates that after 12 months in foster care a child must have a plan for a permanent home. In reSamantha B., 45 Conn. Sup. 468, 479, 721 A.2d 1255 (1998). Foster care should be a strictly limited episode in the life of a child. Simone, after three years, is still in need of a permanent home, and there is no reason her wholly absent biological father, whom she has never met, should impose any further impediment to the process of finding her one. Simone was placed in her present foster home just three and a half months ago, but she already calls her foster mother, "Mommy," and has settled in comfortably and affectionately with this family.
(5) "The age of the child."
Simone, born on November 1998, is nearly three.
(6) "The effort the parent has made to adjust his circumstances, conduct or conditions to make it in the best interest of the child to return to his home in the foreseeable future including but not limited to (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child."
Sidney made little effort to adjust his circumstances, conduct or conditions to make it in the best interest of Simone to be placed in his custody in the foreseeable future. His own criminal conduct is one of the major impediments to his ability to parent. Sidney failed to maintain regular contact with his child, DCF or the foster home. He has not contributed any gifts or money toward his daughter's support. He did not send her any cards or letters. In rendering this decision on the grounds alleged for termination, this court found that the derelict conduct of Sidney constituted statutory abandonment of Simone.
(7) "The extent to which a parent has been prevented from maintaining a meaningful relationship by the unreasonable acts or conduct of the other CT Page 14809 parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."
There is no evidence that indicates that DCF or any other person interfered with Sidney's ability to maintain a relationship with Simone by unreasonable acts or conduct. Indeed, it was his early denial of paternity and prolonged disinterest after her birth, combined with his own poor judgment and criminal involvement that interfered with establishing a relationship with his daughter. There is no evidence that economic circumstances have constituted a significant factor in Sidney's failure to maintain a meaningful relationship with the child. He could have appeared and requested counsel in the early stages of the case. He would have been provided visits and services by DCF at little or not cost if he had expressed a sincere interest and had been cooperative, and he also could have availed himself of rehabilitative programs while incarcerated.
2. Best Interests of the Child
The court must now address the issue of whether the termination of parental rights is in the best interests of the child. This is the dispositional phase of a termination proceeding. In re Hector L., supra,53 Conn. App. 364; In re Daniel C., 63 Conn. App. 339, 348, ___ A.2d ___
(2001).
With a statutorily mandated twelve month limit prior to the institution of a permanency plan, a period of almost three is entirely unacceptable. Simone's lack of permanency and the effects of that uncertainty no longer can be tolerated. She is growing old enough to be cognizant of her attachments to her foster parents and to be greatly affected by them. Finding this medically fragile child a permanent home will prove only more difficult if she is allowed to stay in a legal limbo for a few more years. Simone's best interest will be served by expediting the process of finding her a family that can provide her with the love and specialized care she requires. Emily B. courageously acknowledged her own limitations relative to Simone's care. Nothing presented at trial gives this court any indication Sidney even understands the child's needs.
Based upon the foregoing findings, and having considered all the exhibits and testimony, the court concludes that the evidence is clear and convincing that the best interest of Simone is served by the termination of her mother and father's parental rights so she may be free for adoption. The court notes that counsel for the child fully supports this result as in the best interests of the child.
 IV
CT Page 14810 CONCLUSION
The petition is granted and judgment may enter terminating Ebony P.'s and Sidney P.'s parental rights in Simone P. Pursuant to General Statutes Sec. 17a-112 (h), it is ordered that the commissioner of DCF be appointed statutory parent so that Simone can be placed for adoption. In securing an adoption, the court urges DCF to pursue all possible routes, including photo registries.
The statutory parent will file a written report with the court on or before November 6, 2001 at 9:00 A.M. on a plan for Simone. Additional plans will be filed in accordance with state and federal law at least every three months until such time as adoption is finalized. A written motion to review Simone's plan must be filed with the court on or before September 5, 2002 at 9:00 A.M.[6]
KELLER, J.